1

```
 1                      UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
 2


 3


 4      UNITED STATES OF AMERICA,           )
                                            )
 5      vs.                                 )  Criminal Action
                                            )
 6      DEBRA MULLOY,                       )  No. 18-10200-FDS
                             Defendant      )
 7                                          )
                                            )
 8                                          )


 9


10      BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV


11


12
                  PLEA TO INFORMATION AND WAIVER TO INDICTMENT
13


14
                   John Joseph Moakley United States Courthouse
15                             Courtroom No. 2
                              One Courthouse Way
16                             Boston, MA 02210


17
                                July 10, 2018
18                               11:00 a.m.


19


20


21


22


23                             Valerie A. O'Hara
                             Official Court Reporter
24        John Joseph Moakley United States Courthouse
                          1 Courthouse Way, Room 3204
25                             Boston, MA 02210
                           E-mail: vaohara@gmail.com
```

1    APPEARANCES:

2    For The United States:

3         United States Attorney's Office, by MARK J. BALTHAZARD,
     ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200,
4    Boston, Massachusetts  02110;

5    For the Defendant:

6         Dwyer LLC, by THOMAS E. DWYER, JR., ESQ., and JONATHAN C.
     CRAFTS, ESQ., 10 Derne Street, Boston, Massachusetts 02114.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        PROCEEDINGS

2               THE CLERK:  All rise.  Thank you.  Please be seated.

3       Court is now in session in the matter of United States vs.

4       Debra Mulloy, Criminal Action Number 18-10200.

5               Would counsel please identify themselves for the

6       record.

7               MR. BALTHAZARD:  Good morning, your Honor,

8       Mark Balthazard on behalf of the government.

9               MR. DWYER:  Thomas E. Dwyer, Jr. on behalf of the

11:02AM 10       government.

11               MR. CRAFTS:  Jonathan C. Crafts on behalf of the

12       defendant.

13               THE COURT:  Good morning.

14               MR. DWYER:  Good morning, your Honor.

15               THE COURT:  All right.  I understand we're here for a

16       waiver of indictment and plea to an information; is that

17       correct, Mr. Dwyer?

18               MR. DWYER:  That's correct, your Honor.

19               THE COURT:  All right.  If the defendant would please

11:03AM 20       take the stand.  You may join her up there.  We will first take

21       up the waiver of indictment.

22               (Defendant was sworn.)

23               THE COURT:  All right.  Do you understand that you are

24       now under oath and that if you answer any of my questions

25       falsely, your answers may later be used against you in another

1    prosecution for perjury or making a false statement?

2        THE DEFENDANT:  Yes.

3        THE COURT:  What is your full name?

4        THE DEFENDANT:  Debra Jean DePaul Mulloy.

5        THE COURT:  How old are you?

6        THE DEFENDANT:  Fifty-seven.

7        THE COURT:  How far did you go in school?

8        THE DEFENDANT:  College, graduated.

9        THE COURT:  Are you a citizen of the United States?

11:03AM 10        THE DEFENDANT:  Yes.

11        THE COURT:  Have you been recently treated for or

12   diagnosed with any mental illness or psychiatric or

13   psychological problem of any kind?

14        THE DEFENDANT:  Not at the moment, no.

15        THE COURT:  Have you been recently treated for or

16   diagnosed with any drug addiction or drug problem or alcohol

17   problem of any kind?

18        THE DEFENDANT:  No.

19        THE COURT:  As you sit here today, are you under the

11:04AM 20   influence of any medication or drug or alcohol beverage of any

21   kind?

22        THE DEFENDANT:  No.

23        THE COURT:  Have you received a copy of the

24   information pending against you, that is, the written charges

25   made against you in this case?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And have you fully discussed the charges

3     against you and the facts and circumstances of your case with

4     Mr. Dwyer as your lawyer?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Are you fully satisfied with the counsel

7     and representation and advice given to you in this case by your

8     lawyer, Mr. Dwyer?

9          THE DEFENDANT:  Yes.

11:04AM 10         THE COURT:  All right.  I will first turn to the

11    waiver of indictment.  You have a constitutional right to be

12    charged by an indictment of a grand jury, however, you can

13    waive that right and consent to being charged by an information

14    filed by the United States Attorney.

15         Criminal charges against you in this case have been

16    brought by the U.S. Attorney by the filing of an information

17    instead of an indictment.  Unless you waive indictment, you may

18    not be charged with a felony unless a grand jury finds by

19    return of an indictment that there is probable cause to believe

11:05AM 20    that a crime has been committed and that you committed it.

21         If you do not waive indictment, the government may

22    present the case to the grand jury and ask it to indict you.  A

23    grand jury is composed of at least 16 and not more than 23

24    persons.  At least 12 grand jurors must find that there is

25    probable cause to believe you committed the crime with which

1    you are charged before you may be indicted.  The grand jury

2    might or might not indict you.

3            If you waive indictment by the grand jury, the case

4    will proceed against you on the information filed by the

5    U.S. Attorney just as though you had been indicted.

6            Have you discussed waiving your right to an indictment

7    by the grand jury with your attorney?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Do you believe that you understand your

11:06AM 10   right to an indictment by the grand jury?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Other than whatever may be in the plea

13   agreement, have any other threats or promises been made in

14   order to get you to waive indictment?

15           THE DEFENDANT:  No.

16           THE COURT:  And do you wish to waive your right to an

17   indictment by a grand jury?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Mr. Dwyer, is there any reason that I

11:06AM 20   should not accept the waiver?

21           MR. DWYER:  None.

22           THE COURT:  All right.  I have the waiver of

23   indictment form which appears to have been signed by the

24   defendant and by Mr. Dwyer.  I find that the waiver of

25   indictment is made knowingly and voluntarily, and I accept it,

1    and I will countersign the waiver.

2            All right.  Mr. Dwyer, may we dispense with the

3    reading of the information and proceed directly to the plea?

4            MR. DWYER:  Please, your Honor.

5            THE COURT:  All right.  I will start with the plea

6    agreement.  Ms. Mulloy, do you understand that you have entered

7    into a plea agreement with the United States Attorney's Office?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Did you sign the agreement?

11:06AM 10            THE DEFENDANT:  Yes.

11            THE COURT:  Is that your signature on the last page of

12    the plea agreement?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Did you have an opportunity to read the

15    agreement and discuss it with your lawyer before you signed it?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Mr. Balthazard, would you summarize the

18    basic terms of the plea agreement?

19            MR. BALTHAZARD:  Yes, your Honor.  The plea agreement

11:07AM 20    provides that Ms. Mulloy will plead guilty to two counts of

21    wire fraud and one count of aggravated identity theft, that she

22    faces certain penalties, maximum penalties, as set forth in

23    paragraph 2.

24            The Sentencing Guidelines that have been agreed to by

25    the parties include the base offense level of 7, a loss between

1    $1.5 and $3.5 million, that the offense involved or offenses

2    involved an abuse of position of trust, and that the term for

3    aggravated identity theft is 24 months to run consecutive to

4    any other term of imprisonment.

5           The U.S. Attorney has reserved the right to seek

6    enhancements for two other guideline provisions, that the

7    offenses resulted in substantial financial hardship to one or

8    more victims, and that the defendant knew or should have known

9    that the victim of her offenses was a vulnerable victim, and

11:08AM 10   the defendant has reserved the right to contest those

11   enhancements.

12          The defendant has agreed there's no basis for a

13   departure outside the guidelines except for diminished

14   capacity.

15          The U.S. Attorney has agreed to recommend a sentence

16   of incarceration at the low end of the guideline range as

17   calculated by the Court at sentencing on Counts 1 and 2 with an

18   additional two years to run consecutive to the sentence imposed

19   on Counts 1 and 2, a fine within the guideline range, 36 months

11:09AM 20   of supervised release, a mandatory special assessment of $300,

21   and restitution in the amount of at least $2.65 million, and

22   forfeiture as set forth in the agreement.

23          There is a waiver of right to appeal, and it's clear

24   that the Court is not bound by the plea agreement, and the

25   defendant may not withdraw her plea if the Court imposes a

1    sentence that is not within the terms of the plea agreement.

2            There's a forfeiture provision as well, and those are

3    essentially the terms, your Honor.

4            THE COURT:  All right.  Ms. Mulloy, do you understand

5    that that was only a summary of the plea agreement --

6            THE DEFENDANT:  Yes.

7            THE COURT:  -- and that the written plea agreement

8    contains all of the terms to which you have agreed?

9            THE DEFENDANT:  Yes.

11:09AM 10            THE COURT:  Do you believe that you understand the

11    terms of the plea agreement?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Do you understand that this is the only

14    agreement that you have with the U.S. Government?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Has anyone made any other promise or

17    assurance to you of any kind in an effort to get you to plead

18    guilty?

19            THE DEFENDANT:  No.

11:10AM 20            THE COURT:  Do you understand that under the plea

21    agreement, the government has agreed to recommend a particular

22    sentence or type of sentence?

23            THE DEFENDANT:  Yes.

24            THE COURT:  And do you understand that the government

25    has only agreed to make a recommendation and that I could

1   reject that recommendation?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And do you understand that if I reject

4   that recommendation, I could impose a sentence that may be

5   longer than you anticipate, and you will not have a chance to

6   withdraw your plea of guilty?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anyone attempted in any way to force

9   you to plead guilty or to threaten you if you did not?

11:10AM 10          THE DEFENDANT:  No.

11          THE COURT:  Are you pleading guilty of your own free

12   will because you are in fact guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that the crimes to which

15   you are pleading guilty are felonies?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that if I accept your

18   plea, you'll be judged guilty of those crimes?

19          THE DEFENDANT:  Yes.

11:10AM 20          THE COURT:  Mr. Balthazard, would you please state the

21   maximum possible penalty provided by law and any applicable

22   mandatory minimum penalty?

23          MR. BALTHAZARD:  Yes, your Honor.  On each of Counts 1

24   and 2, the maximum is incarceration for a period of 20 years,

25   three years of supervised release, a fine of $250,000 or twice

1    the gross gain or loss, whichever is greater, a mandatory

2    special assessment of $100, restitution, and forfeiture to the

3    extent charged in the information.

4          With respect to Count 3, there's a mandatory sentence

5    of incarceration for two years consecutive to the sentence for

6    the underlying enumerated felony, supervised release for one

7    year, a fine of $250,000 or twice the gross gain or loss,

8    whichever is greater, a mandatory special assessment of $100,

9    and restitution.

11:11AM 10          THE COURT:  All right.  Ms. Mulloy, do you understand

11    that I will have the power to give you a term of imprisonment

12    of up to 20 years on Counts 1 and 2?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And do you understand that on Count 3, I

15    will be required to give you a term of imprisonment of two

16    years consecutive to whatever sentence I impose on Counts 1 and

17    2; do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  In other words, I can't go lower than

11:12AM 20    that; do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  Do you understand that in

23    addition to a prison term, I will have the power to give you a

24    term of supervised release of up to three years on Counts 1 and

25    2 and up to one year on Count 3?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if you violate the

3   conditions of your supervised release, you could be given

4   additional time in prison?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that I also will have

7   the power to impose a fine on all three counts of up to

8   $250,000 or twice the gross gain or loss, whichever is greater?

9          THE DEFENDANT:  Yes.

11:12AM 10          THE COURT:  Do you understand that by pleading guilty,

11   there will be forfeiture consequences, and you'll be required

12   to forfeit certain property to the United States?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that I may order you to

15   pay restitution to any victim of your offense, in other words,

16   I may order you to pay money to any victim to compensate them

17   for any harm you may have caused?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And do you understand that in addition to

11:13AM 20   everything else, you'll be required to pay a $100 special

21   assessment on each count for a total of $300?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand all of those possible

24   consequences of pleading guilty, a term of imprisonment, which

25   cannot be less than two years, a term of supervised release, a

1    fine, forfeiture consequences, restitution, and a special

2    assessment?

3                THE DEFENDANT:  Yes.

4                THE COURT:  All right.  Do you understand that by

5    being judged guilty, you may lose valuable civil rights,

6    including the right to vote, the right to hold public office,

7    the right to serve on a jury, and the right to possess a gun?

8                THE DEFENDANT:  Yes.

9                THE COURT:  All right.  I now want to talk to you

11:13AM 10   about the United States Sentencing Guidelines and how they

11   might affect your sentence.

12               The Sentencing Guidelines have been issued by the

13   United States Sentencing Commission for Judges to follow when

14   determining the sentence in a criminal case.  They are not

15   mandatory.  That means I do not have to follow them, but,

16   nonetheless, they are important.

17               Have you and your lawyer talked about the Sentencing

18   Guidelines and how they might apply in your case?

19               THE DEFENDANT:  Yes.

11:14AM 20   THE COURT:  Do you understand that I will not be able

21   to determine your guideline sentence until after probation has

22   prepared a pre-sentence report?

23               THE DEFENDANT:  Yes.

24               THE COURT:  Do you understand that that pre-sentence

25   report will contain information about you, and your criminal

1    history, if you have one, and the crimes you committed?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that the report will

4    also contain a recommended application of the Sentencing

5    Guidelines?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that you will have an

8    opportunity to read that report and to go over it with your

9    lawyer?

11:14AM 10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you understand you'll have an

12   opportunity to object to that report and to challenge anything

13   report in it and to challenge the application of the Sentencing

14   Guidelines that probation recommends?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And do you understand that under the

17   guideline system, I may have the authority to depart from the

18   guideline sentence and to give you a sentence that's either

19   higher or lower than what the guidelines call for?

11:15AM 20         THE DEFENDANT:  Yes.

21         THE COURT:  And do you understand that although I am

22   not required to follow the Sentencing Guidelines, I am required

23   to consider the guideline sentence before I impose sentence on

24   you?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that by law I'm also

2     required to consider a number of different sentencing factors,

3     including such things as the nature and circumstances of the

4     crimes, your personal history and characteristics, and the need

5     for the sentence to reflect the seriousness of the offense,

6     promote respect for the law, provide just punishment, provide

7     adequate deterrence, and protect the public?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Do you understand that you

11:15AM 10     will not be permitted to withdraw your plea of guilty if your

11     sentence is longer than you expected, or if you're unhappy with

12     your sentence, or if it's different from any sentence your

13     lawyer might have predicted?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  Do you understand that parole

16     has been abolished and that if you are sentenced to prison, you

17     will not be released early on parole?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that any victim of your

11:16AM 20     crime has the right to participate in the sentencing proceeding

21     either in writing or in person?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that under the plea

24     agreement, you have waived at least in part your right to

25     appeal any sentence that I impose?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Do you understand that you have agreed

3   that you will not appeal any sentence of imprisonment of 75

4   months or less that I impose?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Do you understand that in addition to

7   waiving your right to appeal such a sentence, you've also

8   agreed to give up your right to challenge it in a future legal

9   proceeding?

11:16AM 10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you understand you've also waived your

12   right to appeal any orders concerning your supervised release,

13   fines, forfeiture, or restitution?

14           THE DEFENDANT:  Yes.

15           THE COURT:  And do you understand that in addition to

16   waiving your right to appeal or challenge your sentence, you've

17   also waived your right to appeal or challenge your conviction,

18   your plea of guilty?

19           THE DEFENDANT:  Yes.

11:17AM 20           THE COURT:  And do you understand that the only

21   exceptions are that you've reserved your right to later claim

22   that your lawyer rendered ineffective assistance of counsel or

23   that the prosecutor engaged in misconduct entitling you to

24   relief?  Do you understand that?

25           THE DEFENDANT:  Yes, I do.

1          THE COURT:  Do you understand that the government has

2     agreed that it will not appeal any prison sentence of 75 months

3     or more?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Is there anything further on the waiver of

6     appeal, Mr. Balthazard?

7          MR. BALTHAZARD:  No, your Honor, thank you.

8          THE COURT:  Mr. Dwyer.

9          MR. DWYER:  None.

11:17AM 10          THE COURT:  All right.  Ms. Mulloy, do you understand

11     that you have the right to plead not guilty to any crime

12     charged against you and to go to trial?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that you have the right

15     to a trial by jury?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that at the trial, you

18     would be presumed to be innocent, and the government would have

19     to prove your guilt beyond a reasonable doubt?

11:17AM 20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that at the trial, you

22     would have the right to the assistance of counsel for your

23     defense?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that you would have the

1   right to see and hear all the witnesses against you and to have

2   them cross-examined in your defense?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand that you would have the

5   right to require witnesses to come to court to testify in your

6   defense?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that you would have the

9   right, if you chose to exercise it, to testify in your defense?

11:18AM 10        THE DEFENDANT:  Yes.

11         THE COURT:  Do you understand that you would have the

12   right to refuse to testify and to refuse to put on evidence

13   unless you voluntarily elected to do so?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand that if you decided not

16   to testify or not to put on any evidence, that those facts

17   could not be used against you?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand that by pleading guilty

11:18AM 20   here today, if I accept your plea, they'll be no trial, and

21   you'll have waived or given up your right to a trial?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Mr. Balthazard, would you

24   please summarize the charges against the defendant describing

25   the essential elements of each offense charged.  I'll ask you

1    in a moment for the factual basis.  I'm looking for the

2    elements of the offense.

3         MR. BALTHAZARD:  Yes, your Honor.  There are three

4    counts in the information.  The first two charge wire fraud in

5    violation of 18 U.S. Code, Section 1343, and the elements of

6    wire fraud are that there was a scheme to defraud or obtain

7    money or property by false and fraudulent pretenses or

8    representations or promises.

9         As alleged, the use of false statements, assertions,

11:19AM 10   half-truths, or knowing concealments concerned material facts

11   or matters, and that the defendant knowingly and willfully

12   participated in the scheme with knowledge of its fraudulent

13   nature and with the specific intent to defraud, and in

14   furtherance of that, caused the use of an interstate wire.

15        With respect to Count 3, which charges aggravated

16   identity theft in violation of 18 U.S. Code, Section 1028(a),

17   the elements are that the defendant knowingly transferred,

18   possessed, or used without lawful authority a means of

19   identification of another person in relation to a felony

11:20AM 20   enumerated in the statute, which includes wire fraud.

21        THE COURT:  All right.  Ms. Mulloy, do you understand

22   what the government would have to prove beyond a reasonable

23   doubt in order for you to be found guilty at the trial as to

24   each of those charges?

25        THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Mr. Balthazard, would you

2     please state the factual basis for the plea, that is, what the

3     government would be prepared to prove if this case were to go

4     to trial.

5          MR. BALTHAZARD:  Yes, your Honor, if the case were to

6     go to trial, the government would present evidence to establish

7     the following beyond a reasonable doubt:  That the defendant,

8     Debra Mulloy, was employed by the company identified in the

9     Information as Company A from approximately October 2004 until

11:20AM 10    the end of 2016.

11          She was hired as the company's comptroller to handle

12     basic accounting and bookkeeping duties but took on additional

13     duties and responsibilities after one of Company A's two owners

14     passed away in 2011.

15          Thereafter, Ms. Mulloy had unfettered access to

16     Company A's financial accounts and was responsible for paying

17     bills, managing payroll, purchasing supplies, and managing the

18     office.

19          Although she did not have signature authority on

11:21AM 20    Company A's checking accounts, she monitored and managed its

21     bank accounts and had authority to make wire transfers to pay

22     its bills.

23          She also had access to Company A's American Express

24     account online.  The person identified in the information as

25     Victim 1 was employed by Company A and had an American Express

1    card issued to Victim 1 in his name.

2         The account associated with Victim 1's AmEx account

3    was a number ending with 84161, and the account number was

4    unique to Victim 1.

5         Beginning in 2012, Ms. Mulloy began using Victim 1's

6    Company A's AmEx account and account number to make

7    unauthorized payments unrelated to her employment ultimately

8    totaling about $2.4 million.

9         Ms. Mulloy did so even after Victim 1 left Company A's

11:22AM 10   employ in 2015.  To conceal the scheme, she paid the AmEx bills

11   from wires from Company A's bank account.  Ms. Mulloy also

12   caused checks from Company A's bank account to be issued for

13   her benefit primarily by causing the owner of the company to

14   sign checks that she falsely led him to believe were for

15   business purchases, specifically checks issued to pay her

16   personal credit card bills and checks payable to her husband's

17   contracting company for which no services were provided.

18        As a result of Ms. Mulloy using Company A's funds, the

19   business became strapped for cash.  Ms. Mulloy deflected

11:22AM 20   attention from herself by telling the owner that their

21   purported cash flow problems were caused by clients who were

22   slow to pay their bills.

23        Ms. Mulloy persuaded the owner to remedy the problem

24   by lending some of his personal retirement funds to the

25   business.  Ms. Mulloy charged roughly $2 million on Company A's

1    AmEx account using Victim 1's account number at two high end

2    Boston area boutiques to buy hundreds of items, including

3    dresses, furs and accessories.  She also spent hundreds of

4    thousands more at or other jewelry and clothing stores in the

5    Boston area, as well as online, through websites, such as the

6    QVC, sales website, and the Home Shopping Network.

7         She made similar purchases though on a smaller scale

8    using her personal credit cards, which she paid off using

9    checks on Company A's bank account.

11:23AM 10    Ms. Mulloy did not purchase most of these items for

11    her own use but instead placed much of what she bought for

12    resale and consignment stores and collected a portion of the

13    purchase price for those items that were sold through those

14    consignment stores.

15         Ms. Mulloy quit her job in December of 2016 after

16    Company A's owner began requesting more information about the

17    company's finances, including the AmEx account.  After she

18    left, the company hired forensic accountants who discovered

19    what Ms. Mulloy had done.

11:24AM 20    In total, they found that Ms. Mulloy had defrauded

21    Company A of approximately $2,654,346.  In furtherance of her

22    fraudulent scheme, Ms. Mulloy caused the two interstate wires

23    to be sent, as described in Counts 1 and 2 of the information

24    on or about the dates alleged.  Those wires were payments from

25    Company A's bank account to American Express primarily to pay

1  for Ms. Mulloy's unauthorized charges.  The evidence would also

2  establish that Ms. Mulloy possessed and used Victim 1's

3  Company A's AmEx account number during and in relation to her

4  wire fraud scheme as charged in Count 3, and that's the summary

5  of the evidence the government would present, your Honor.

6          THE COURT:  All right.  Ms. Mulloy, do you disagree

7  with anything in the government's description of the facts?

8          THE DEFENDANT:  No.

9          THE COURT:  All right.  I will take the plea to the

11:24AM 10  information.

11          THE CLERK:  Ms. Mulloy, would you please stand.

12  Counts 1 and 2 of the information charges you with wire fraud

13  in violation of Title 18, United States Code, Section 1343.

14  How do you wish to plead to Count 1?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  How do you wish to plead to Count 2?

17          THE DEFENDANT:  Guilty.

18          THE CLERK:  Count 3 of the information charges you

19  with aggravated identity theft in violation of Title 18,

11:25AM 20  United States Code, Section 1028A(a)(1).  How do you wish to

21  plead to Count 3?

22          THE DEFENDANT:  Guilty.

23          THE CLERK:  You can be seated.

24          THE COURT:  It is the finding of the Court in the case

25  of United States vs. Debra Mulloy, also known as Debra DePaul,

1   that the defendant is fully competent and capable of entering

2   an informed plea, that the defendant is aware of the nature of

3   the charges and the consequences of the plea, and that the plea

4   of guilty is a knowing and voluntary plea supported by an

5   independent basis in fact containing each of the essential

6   elements of the offenses charged.  The plea is therefore

7   accepted, and the defendant is now adjudged guilty of those

8   offenses.

9         All right.  Ms. Mulloy, as I told you, a written

11:25AM 10   pre-sentence report will be prepared by probation to assist me

11   in determining your sentence.  You'll be asked to give

12   information for that report.  Your lawyer may be present, if

13   you wish.  It is important that the report be accurate.  It

14   will not only affect what sentence you receive but what happens

15   to you after you are sentenced.

16         For example, if you're sent to prison, it will affect

17   where you are sent and what happens to you when you get there.

18   Even minor mistakes in the report should be corrected.  You'll

19   have a chance to read the report and to go over it with your

11:26AM 20   lawyer and to make objections to it before the time of

21   sentencing.  Both your lawyer and you personally will have the

22   opportunity to speak on your behalf at the time of sentencing.

23         I will therefore refer you to probation for the

24   presentence investigation and preparation of the report.  That

25   process usually takes about 12 weeks to complete, so I will set

1    sentencing for Tuesday, October 2nd at 2:00.  Does that work

2    for everyone?

3            MR. BALTHAZARD:  Unfortunately, your Honor, I have

4    another sentencing at that time on that date.

5            THE COURT:  All right.  How about Tuesday, October 9th

6    at 9:30 a.m.  Does that work?

7            MR. BALTHAZARD:  That's fine, thank you.

8            MR. DWYER:  Fine, your Honor.

9            THE COURT:  October 9th at 9:30 a.m.  What is the

11:27AM 10   government's position with regard to release or detention?

11           MR. BALTHAZARD:  The government is satisfied with the

12   recommendations made in the pretrial services report, your

13   Honor, $25,000 unsecured bond and a variety of conditions set

14   forth there.

15           THE COURT:  All right.  I take it, Mr. Dwyer, that is

16   satisfactory to you?

17           MR. DWYER:  That's fine.

18           THE COURT:  All right.  Ms. Mulloy, I'm going to

19   release you on a $25,000 unsecured bond with certain

11:28AM 20   conditions.  There are various conditions of release required

21   by statute that I'm going to require you to obey.  They'll be

22   set forth in the paperwork.  You are to report to probation and

23   pretrial services as directed.  You're to maintain your current

24   residence, and you cannot move without prior permission.  You

25   should continue to actively seek employment.  You should not

1    obtain any employment if you would have access to the funds or

2    banking information of an individual or a business unless

3    approved by probation and by the business or person in

4    question.

5          You must surrender any passport you have to probation

6    or pretrial services and not to apply for or obtain any other

7    passport or travel documents.  I'm going to restrict your

8    travel to the New England states, which are Massachusetts,

9    Rhode Island, Connecticut, Vermont, New Hampshire and Maine,

11:29AM 10   and you're not to travel outside those six states without

11   permission.

12         You must not possess any gun, firearm, destructive

13   device or other dangerous weapon.  Any contact you have with

14   law enforcement of any kind must be reported to probation

15   within 24 hours, and you're to participate in a mental health

16   treatment program as directed by probation and to comply with

17   any of the rules or requirements of any program.

18         You'll be required to pay for or contribute to the

19   cost of any treatment based on your ability to pay or

11:29AM 20   third-party payment payment, if available.

21         Do you understand the conditions that I'm releasing

22   you under, Ms. Mulloy?

23         THE DEFENDANT:  Yes, I do.

24         THE COURT:  Do you have any questions for me about

25   those conditions?

1          MR. BALTHAZARD:  No, I don't.

2          THE COURT:  All right.  If there's any doubt in your

3    mind about what you can and can't do, you should ask questions,

4    ask probation whether it's permissible, not simply decide on

5    your own.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And do you understand that you're no

8    longer presumed innocent, you've pleaded guilty, and I'll take

9    that fact into account if there's any problem.  Do you

11:30AM 10    understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  All right.  I'm going to release you on

13    that bond and with those conditions.  I'll sign the paperwork

14    in advance for the sake of convenience, but you will have to

15    swear under oath that you do accept them, and the clerk will

16    also have to sign the paperwork as well.

17          All right.  Is there anything further, Mr. Balthazard?

18          MR. BALTHAZARD:  No, your Honor, thank you.

19          THE COURT:  Mr. Dwyer.

11:31AM 20          MR. DWYER:  The only thing I was going to say on a

21    lighter note was that I've worked hard to keep my composure

22    here during this hearing given the fact that my old law

23    partner's portrait is hovering over me, your Honor.

24          THE COURT:  Well, she stares at me as well every day,

25    Mr. Dwyer.

1          THE COURT:  All right.  With that, I will see you all

2    again barring further developments on October the 9th.

3          MR. DWYER:  Thank you, your Honor.

4          THE CLERK:  All rise.

5          (Whereupon, the hearing was adjourned at 11:31 a.m.)

6                   C E R T I F I C A T E

7    UNITED STATES DISTRICT COURT )

8    DISTRICT OF MASSACHUSETTS ) ss.

9    CITY OF BOSTON )

10

11          I do hereby certify that the foregoing transcript,

12   Pages 1 through 28 inclusive, was recorded by me

13   stenographically at the time and place aforesaid in Criminal

14   Action No. 18-10200-FDS, UNITED STATES of AMERICA vs.

15   DEBRA MULL0Y and thereafter by me reduced to typewriting and is

16   a true and accurate record of the proceedings.

17          Dated this October 7, 2019.

18

19                    s/s Valerie A. O'Hara

20                    _____

21                    VALERIE A. O'HARA

22                    OFFICIAL COURT REPORTER

23

24

25